

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV 13-5482**

-----------------------------------------x

JASON L. MAYBANK,

        Plaintiff,

-against-

THE CITY OF NEW YORK; SGT. CHRISTOPHER TOMLINSON; SGT. DAVID YU; P.O. EDWARD KUNZ; and, P.O. MICHAEL SHEEHAN; the individual defendants sued individually and in their official capacity,

        Defendants.

**BRODIE, J.**
**GOLD, M.J.**

**COMPLAINT**

ECF Case

Jury Trial Demanded

-----------------------------------------x

Plaintiff, JASON L. MAYBANK, by and through his attorneys, the KUSHNER LAW GROUP, P.L.L.C., and the LAW OFFICES OF SCOTT G. CERBIN, ESQ., PLLC states as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights, common law, and tort action in which plaintiff seeks relief for the violation of plaintiff's rights secured by 42 U.S.C. § 1983; the Fourth, and Fourteenth Amendments to the United States Constitution; and the laws of the State of New York. The claims arise from an incident that occurred on or about September 5, 2011. During the incident defendant City of New York, and members of the New York City Police Department ("NYPD") subjected plaintiff to, among other things, excessive force, assault and battery, and implementation and continuation of an unlawful municipal policy, practice, and custom. Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, pursuant to 42 U.S.C. §§ 1988, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983, and the Fourth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Queens County, and the City of New York and all defendants are subject to personal jurisdiction in the Eastern District of New York.

## PARTIES

4.      Plaintiff Jason L. Maybank is a resident of the State of New York, Queens County.  Mr. Maybank is currently incarcerated in St. Lawrence County, New York at the Gouverneur Correctional Facility.

5.      Defendant City of New York is a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

6.      Defendant Sgt. Christopher Tomlinson is a New York City Police Officer, employed with the 110th Precinct, located in Queens, New York or other as yet unknown NYPD assignment who violated plaintiff's rights as described herein.

7.      Defendant Sgt. David Yu is a New York City Police Officer, employed with the 110th Precinct, located in Queens, New York or other as yet unknown NYPD assignment who violated plaintiff's rights as described herein.

8.      Defendant P.O. Edward Kunz is a New York City Police Officer, employed with the 110th Precinct, located in Queens, New York or other as yet unknown NYPD assignment who violated plaintiff's rights as described herein.

9. Defendant P.O. Michael Sheehan is a New York City Police Officer, employed with the 110th Precinct, located in Queens, New York or other as yet unknown NYPD assignment who violated plaintiff's rights as described herein.

10. The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

11. On September 5, 2011, at and in the vicinity of 41-08 97th Place, Queens, New York, several police officers operating from the 110th Precinct of the NYPD, including upon information and belief, defendants Sgt. Christopher Tomlinson, Sgt. David Yu, P.O. Edward Kunz, P.O. Michael Sheehan, and other as yet unknown members of the NYPD, at times acting in concert and at times acting independently, committed the following illegal acts against the plaintiff.

12. On September 5, 2011, at approximately 2:00 a.m., at and in the vicinity of 41-08 97th Place, Queens, New York, while plaintiff was lawfully walking on the street, the individual defendants detained plaintiff.

13. At the above-stated time and place, plaintiff was ordered to stop and defendant KUNZ or defendant SHEEHAN placed handcuffs about plaintiff's wrists in a "rear-cuff" position. Defendant KUNZ or defendant SHEEHAN then searched plaintiff and recovered no weapons or contraband.

14. Thereafter, several other members of the 101st Precinct of the NYPD arrived at the above-stated location, including defendant YU, and TOMLINSON.

15. Defendant KUNZ arrested plaintiff for Robbery in the First Degree, Criminal use of a Firearm in the First Degree and other related charges.

16. During the arrest of plaintiff, the defendants committed excessive force against him by, among other things, unnecessarily, gratuitously, and maliciously: (1) tripping plaintiff; (2) sitting on plaintiff while he was on the ground; and, (3) kicking plaintiff in the face while he was handcuffed and face down on the ground.

17. During the arrest of plaintiff, the defendants committed excessive force against him by committing the above-described acts. Those defendants who did not touch him, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

18. The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff, since plaintiff was unarmed, compliant, and did not resist arrest.

19. Plaintiff was physically injured as a result of the excessive use of force, and suffered a Mandibular Symphysis Fracture and other injuries to his face and mouth. Plaintiff was visibly bleeding and noticeably injured. However, the defendants failed to call an ambulance to the scene to treat plaintiff's injuries. Instead, plaintiff was taken to the 110th Precinct, located in Queens, New York for arrest processing.

20. Thereafter plaintiff was taken by ambulance to Elmhurst Hospital Center, located in Queens, New York. While plaintiff was at Elmhurst Hospital Center, the defendants unnecessarily interfered with valid medical requests from the doctors and staff at the hospital who tried to treat plaintiff's injuries. For example, plaintiff was brought to Elmhurst Hospital Center at approximately 3:30 a.m. but was not consulted until approximately 12:00 p.m.

21. The actions of the individual defendants were performed within the scope of their employment and authority, and for whose acts the defendant City is liable under the doctrine of *resondeat superior*.

4

22. The actions of the individual defendants violated Mr. Maybank's clearly established rights under the Fourth, and Fourteenth Amendments to the Constitution and were the direct and proximate cause of the physical and psychological injuries he suffered.

23. The actions of the individual defendants were intentional, malicious, and in bad faith, thus giving rise to punitive damages as to the individual defendants.

## COUNT ONE

### (42 U.S.C. § 1983 UNREASONABLE AND EXCESSIVE FORCE)

24. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

25. The individual defendants' use of force upon plaintiff, as described herein, and the individual defendants' failure to intervene, was objectively unreasonable and caused plaintiff pain and injury.

26. Accordingly, defendants are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

## COUNT TWO

### (42 U.S.C. § 1983 – MONELL CLAIM)

27. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

28. Prior to September 5, 2011, the City developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of Mr. Maybank's rights.

29. It was the policy and/or custom of the City to investigate inadequately and improperly civilian complaints of police misconduct. Instead, acts of brutality were tolerated by the City. The Internal Affairs Bureau (IAB) and the Civilian Complaint Review Board (CCRB) have substantially failed to investigate, deliberate, and discipline transgressors. For instance, IAB investigations of brutality rarely lead to administrative trials and when they do, and the charges are somehow sustained, the punishment is minimal, lacking any deterrent effect.

30. The City has been on notice for more than a generation that brutality is widespread and that particular reforms need to be implemented. From reform-minded Commissioner Patrick Murphy to the Mollen Commission twenty-five years later, the City has been repeatedly cautioned that a systemic tolerance for brutality flourishes throughout the NYPD. Twenty years before plaintiff was brutalized, the Mollen Commission report noted, "This tolerance, or willful blindness, extends to supervisors as well. This is because many supervisors share the perception that nothing is really wrong with a bit of unnecessary force and because they believe that this is the only way to fight crime today." *Mollen Comm. Report*, at 49.

31. It was the City's policy and/or custom to supervise and discipline officers inadequately, including the defendant officers, thereby failing to discourage constitutional violations on the part of its police officers.

32. Police officers of the City of New York have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence as to misconduct of which they are aware, thereby establishing and perpetuating a "code of silence."

33. This "code of silence" is a custom deeply ingrained in the members of the New York City Police Department so as to constitute the actual policy of the City of New York.

34. The City has been deliberately indifferent to the need for more or different training, rules and regulations relating to police officers who witness or have information regarding misconduct by fellow officers. The City has failed to properly sanction or discipline officers who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other New York City police officers, thereby causing and encouraging New York City police officers, including the individual defendant officers in this case, to violate the rights of citizens such as Mr. Maybank.

35. It is believed that the City has maintained no system or an inadequate system of review of officers who withhold knowledge or give false information regarding misconduct by fellow officers. This failure to identify and track such officers, including the defendant officers, or to discipline, more closely supervise, or retrain such officers who engage in the "code of silence," causes New York City police officers to believe that they can engage in misconduct, secure in the knowledge that their fellow officers will neither intervene, nor give evidence against them. These systemic deficiencies include, but are not limited to:

  a. Preparation of investigative reports designed to vindicate the conduct of officers who gave false information about the misconduct of other officers, or who falsely denied knowledge about misconduct which they were in a position to observe;

  b. Preparation of investigative reports which uncritically rely solely on the word of police officers and which systematically fail to credit testimony of non-police witnesses;

  c. Preparation of investigative reports which omit or ignore factual information and physical evidence which contradict the accounts of police officers;

7

  d. Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigation;

  e. Failure to have meaningful review of investigative reports by responsible superior officers for accuracy or completeness, including consideration of the conduct of officers who were not actively engaged in the misconduct which was the subject of the investigation, and acceptance of conclusions which are not supported by the evidence or which contradict such evidence; and,

  f. Failure to identify potential "code of silence" violations and maintain accurate records of allegations of such misconduct.

36. The City, prior to and at the time of this incident, was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers who practice the "code of silence," and was deliberately indifferent to that need.

37. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens like plaintiff and the need for more or different training and discipline are policies, practices, and customs of the City of New York and have caused police officers, including the officer defendants in this case, to believe that they can violate the rights of citizens with impunity, and that their fellow officers would conceal such conduct, including swearing falsely and committing perjury, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens.

38. As a direct and proximate result of the City's deliberate indifference, defendants violated Mr. Maybank's constitutional rights for which he suffered substantial damages.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

    a.    Compensatory damages in an amount to be determined by a jury;

    b.    Punitive damages in an amount to be determined by a jury;

    c.    Costs, disbursements, and attorney's fees, pursuant to 42 U.S.C. § 1988; and

    d.    Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:    Brooklyn, New York
June 25, 2013

Michael P. Kushner, Esq.
KUSHNER LAW GROUP, P.L.L.C.
16 Court Street, Suite 2901
Brooklyn, New York 11241
(718) 504-1440
mk@kushlawgroup.com


Scott G. Cerbin, Esq.
*Attorney for Plaintiff*
SCOTT G. CERBIN, ESQ., PLLC
16 Court Street, Suite 2901
Brooklyn, New York 11241
(718) 596-1829
mail@cerbinlaw.com

9